J-A02042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :           PENNSYLVANIA
                                          :

            v.                               :

KASHIF OMAR ELLIS                  :

         Appellant          :    No. 1435 WDA 2023

Appeal from the PCRA Order Entered November 17, 2023
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001880-2017

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            :           PENNSYLVANIA
                                          :

            v.                               :

KASHIF ELLIS                       :

         Appellant          :    No. 421 WDA 2024

Appeal from the PCRA Order Entered November 17, 2023
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000773-2018

BEFORE: KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:               **FILED: April 9, 2025**

     In these consolidated appeals, Kashif Ellis ("Ellis") appeals from the order entered by the Northumberland County Court of Common Pleas denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA")[1] after an evidentiary hearing. Ellis asserts that the PCRA court abused its discretion

---

[1] 42 Pa.C.S. §§ 9541-9546.

by concluding that Ellis failed to prove that his trial counsel, Attorney Ralph Thomas Forr, Jr., provided him with ineffective assistance. Because we discern no abuse of discretion in the PCRA court's conclusion, we affirm.

Ellis' petition stemmed from his convictions in two interrelated cases regarding the July 13, 2013 robbery and shooting death of Stephen Lamont Hackney ("Hackney"). Ellis orchestrated the robbery with his then-girlfriend Taylor Griffith ("Griffith") and Quasim Green ("Green"). A prior panel of this Court summarized the background of the first case:

> At Ellis' direction, Griffith visited [Hackney's residence.] While inside … Griffith texted Ellis, informing him that she saw large quantities of narcotics and U.S. currency, and that Hackney was alone and unarmed. Griffith … unlocked the back door to Hackney's residence so that Ellis and Green could enter [and returned to Hackney's bedroom. Around 1:00 a.m.,] Ellis barged into Hackney's bedroom and shot him three times, resulting in his death. [Griffith] and her co-defendants then stole the cash and narcotics and fled.

> The police responded to the scene and discovered Hackney's body, as well as large quantities of cash nearby. After securing and searching the surrounding area, police seized a Samsung cellphone …, which had been discarded in the alley behind Hackney's residence. The police obtained a search warrant for the digital contents of the Samsung phone. Forensic analysis of the Samsung phone revealed that it belonged to Green.

> The investigation into the murder went on for several years. During the investigation, the police utilized a software geo-location mapping program called CellHawk. [CellHawk collects historical data from cellular tower "pings" to locate cellphone users on a given date and time. The data is known as cell-site location information ("CSLI")]. The investigating officers accessed [CSLI] for two separate cell phones that, police determined, were respectively associated with Ellis and Griffith. The [CSLI placed] these phones in the general area of Hackney's residence on the night of the murder. It further showed that both Ellis' and

- 2 -

> Griffith's phones were in the Philadelphia area shortly after the murder, which corroborated Griffith's account. The police obtained the [CSLI], with respect to both Ellis' and Griffith's phones, via a court order.

*Commonwealth v. Ellis*, 240 A.3d 153, *1 (Pa. Super. Aug. 11, 2020) (non-precedential decision).

Based on the above facts, in July 2017, the Commonwealth charged Ellis with first-degree murder, robbery, criminal conspiracy, aggravated assault, burglary, criminal trespass, recklessly endangering another person, discharging a firearm into an occupied structure, criminal use of a communication facility, and possession with intent to deliver a controlled substance (collectively, "the murder charges") at docket number CR 1880-2017. The Commonwealth also filed various criminal charges against Ellis' co-conspirators, Griffith and Green.

Subsequently, Griffith pleaded guilty to third-degree murder and agreed to testify as a Commonwealth witness against Ellis in exchange for a sentence of fifteen to thirty years in prison. Ellis threatened to shoot Griffith, prompting the Commonwealth to initiate a second case against Ellis at docket CR 773-2018 with charges of intimidation of a witness and retaliation against a witness (collectively, "the intimidation charges").[2]

The two cases against Ellis as well as Green's case were joined together for trial. Prior to trial, the trial court continued the case several times at Ellis'

_____

[2] 18 Pa.C.S. §§ 4952(a)(1), 4953(a).

request. Some of the continuances were to accommodate Ellis' changes in counsel. Initially, Ellis was represented by Attorney Robert Donaldson. After Attorney Donaldson withdrew in late July 2018, Ellis elected to proceed pro se. He later requested counsel, and the trial court appointed Attorney Forr to represent him in late September 2018.

A few days after Attorney Forr's appointment, Ellis pro se filed an omnibus pretrial motion. Notwithstanding the rule prohibiting hybrid representation, approximately one week after he was appointed, Attorney Forr argued the omnibus pretrial motion on Ellis' behalf. The trial court denied the motion, as well as a motion in limine filed by Attorney Forr several weeks before trial. The trial court also denied Ellis' motion for a continuance filed four days before the scheduled jury selection in January 2019.

Initially, the Commonwealth intended to try Ellis and Green together. In anticipation of their joint jury trial, Ellis and Green split their preemptory strikes when selecting the jury. At the inception of trial, Green entered into a plea agreement with the Commonwealth, leaving the Commonwealth to try Ellis alone with the jury that had been jointly selected.[3]

Following a five-day trial, where, among other things, Griffith testified that Ellis masterminded the robbery and shot and killed Hackney in his bedroom in her presence, the jury convicted Ellis of the murder charges and

---

[3] Green did not testify at Ellis' trial.

the intimidation charges. On April 16, 2019, the trial court sentenced Ellis to life in prison without the possibility of parole on the murder conviction. On the intimidation charges, the court also imposed an aggregate sentence of twenty-three-and-a-half to forty-seven years in prison, to run consecutively to the murder conviction sentence. This Court affirmed his judgment of sentence in each case, and our Supreme Court denied allowance of appeal. **Ellis**, 240 A.3d 153, **appeal denied**, 250 A.3d 1160 (Pa. 2021).

Ellis filed a timely pro se PCRA petition, his first, on June 14, 2021, pertaining to his convictions at both dockets. Following the appointment of counsel, Ellis filed an amended PCRA petition on September 30, 2022. The PCRA court conducted an evidentiary hearing on June 16, 2023, wherein Ellis and Attorney Forr testified. In an order and opinion entered on November 27, 2023, the PCRA court denied Ellis's petition in its entirety.

Ellis timely appealed from the PCRA court's denial of collateral relief.[4] Both Ellis and the PCRA court complied with Pa.R.A.P. 1925.

_____

[4] Initially, Ellis filed one notice of appeal referencing two lower court docket numbers and purporting to appeal from a November 17, 2023 order that reinstated April 16, 2019 orders imposing his judgments of sentence. Because the November 17, 2023 order simply denied his PCRA petition without reinstating any prior orders, this Court ordered Ellis to show cause as to why we should not quash the appeal at 1435 WDA 2023 as untimely filed to the extent that he was attempting to file a direct appeal. Ellis responded, explaining that he solely intended to appeal from the denial of collateral relief, not his original judgments of sentence, which rendered his appeal timely filed. Because Ellis' filing of a single notice of appeal from an order pertaining to two trial court dockets violated **Commonwealth v. Walker**, 185 A.3d 969 (Pa.
*(Footnote Continued Next Page)*

- 5 -

On appeal, Ellis asks this Court to decide whether the PCRA court abused its discretion by determining that Ellis failed to prove that Attorney Forr provided him with ineffective assistance at trial in five areas: (1) failing to "investigate" Kelsey Bergmann ("Bergmann"),[5] a potential witness who may have contradicted Griffith's testimony, "adequately and thoroughly"; (2) failing to preserve a challenge to suppress the CSLI pursuant to **Carpenter v. United States**, 585 U.S. 296 (2018); (3) failing to present a specific claim pursuant to **Franks v. Delaware**, 438 U.S. 154 (1978); (4) stipulating to the authentication of cellphone evidence instead of challenging the authenticity at trial; and (5) failing to file a motion to strike the jury jointly selected with Green after Green accepted a plea deal. **See** Ellis' Brief at 4-5.[6, 7]

---

2018), we entered an order directing Ellis to correct this defect pursuant to **Commonwealth v. Young**, 280 A.3d 1049 (Pa. Super. 2022) (holding that when there is a **Walker** defect in an appeal to which Pa.R.A.P. 902 applies, this Court's default position is to allow correction of the defect unless the opposing party demonstrates good cause). As directed, Ellis filed an amended notice of appeal regarding the murder charges at 1435 WDA 2023, and an amended notice of appeal regarding the intimidation charges, which we docketed at 421 WDA 2024. This Court sua sponte consolidated the two appellate dockets pursuant to Pa.R.A.P. 513. We discharge the rule to show cause and amend the original caption at 1435 WDA 2023 to reflect the changes.

[5] We note that Kelsey Bergmann's first and last names have alternative spellings in the record, including "Kelsi," "Kelsie," and "Bergman." For ease of review, we refer to Bergmann by the spelling used by Ellis in his brief.

[6] We have reordered the issues presented by Ellis for ease of disposition.

[7] We note with disapproval that the Commonwealth did not file a brief.

When reviewing the denial of PCRA relief, we abide by the following standard. Our review is limited to determining whether "the PCRA court's conclusions are supported by the record and free from legal error." ***Commonwealth v. Johnson***, 289 A.3d 959, 979 (Pa. 2023). Because the PCRA court hears the evidence and assesses credibility firsthand, we defer to its factual findings. ***Id.*** Our review of a PCRA court's legal conclusions, however, is de novo. ***Id.***

To obtain PCRA relief, the petitioner must establish, by a preponderance of the evidence, that the conviction or sentence resulted from one or more of the enumerated errors set forth in 42 Pa.C.S. § 9543(a)(2). One such error is the ineffective assistance of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Id.*** § 9543(a)(2)(ii). A petitioner must also show the claim has not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial, ... or on direct appeal could not have been the result of any rational, strategic[,] or tactical decision by counsel." 42 Pa.C.S. § 9543(a)(3), (a)(4).

When reviewing a claim that counsel rendered ineffective assistance, "we begin, as we must, with the presumption that counsel acted effectively." ***Johnson***, 289 A.3d at 979. To overcome this presumption, a petitioner must establish that: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner

suffered prejudice because of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different absent the error." *Id.* A petitioner's failure to establish any one of these three prongs results in failure of the claim. ***Commonwealth v. Rizor***, 304 A.3d 1034, 1050-51 (Pa. 2023).

### Failure to Investigate Bergmann as a Witness

In his first issue, Ellis argues that Attorney Forr rendered ineffective assistance by "failing to adequately and thoroughly investigate the potential testimony of potential witness [] Bergmann." Ellis' Brief at 13. Ellis contends that Bergmann could have offered testimony that undermined Griffith's timeline of events. *Id.* Ellis claims that Attorney Forr rendered ineffective assistance by failing to subpoena her to testify. *Id.* at 16. Ellis contends that it was unreasonable for Attorney Forr to have relied upon the Commonwealth's intent to call Bergmann as a witness, especially considering that Bergmann's testimony "was detrimental" to the Commonwealth's "case in chief." *Id.* Ellis insists that if Bergmann had testified, her testimony would have "substantially undermined Griffith's chronology of events," resulting in a different outcome in a trial that centered upon Griffith's testimony implicating Ellis as the shooter. *Id.* at 18-19.

Specifically, Ellis directs our attention to police notes of a 2016 interview with Bergmann, indicating that Bergmann told police that she was present at Hackney's residence in the evening leading into the early morning of his

murder. *Id.* at 13 (citing Commonwealth Ex. 2 (Incident Report)). When she arrived, she was greeted by Hackney's cousin "Atlanta J" as she observed Griffith coming down the stairs wearing a tank top and black thong underwear. *Id.* (citing Commonwealth Ex. 2 (Incident Report)). Ellis maintains that Bergmann's statement undermined Griffith's version of events, as Griffith denied leaving Hackney's bedroom except when she unlocked the back door early in the morning right before the murder, denied seeing Atlanta J when he came to the house to buy drugs from Hackney, and denied seeing Bergmann at the house. *Id.* at 13-14 (citing N.T., 1/30/2019, at 133, 163, 174).

In its opinion, the PCRA court noted Attorney Forr's efforts to look for Bergmann and opined that Ellis failed to explain how Bergmann's testimony would have undermined Griffith's testimony. PCRA Court Opinion, 11/16/2023, at 7-8. When asked about Bergmann at the PCRA evidentiary hearing, Attorney Forr acknowledged his knowledge of her police statement and indicated that, had he been able to locate her, he would have called her as a witness to demonstrate that "Griffith was more involved in this situation than she pretended to be." N.T., 6/16/2023, at 44, 46. Attorney Forr did not attempt to locate Bergmann prior to trial because the prosecution listed her as a witness and he saw her leaving the prosecutor's office a few weeks before trial. *Id.* at 45-46. In the early part of the trial, Attorney Forr learned that the prosecutor decided not to call Bergmann because he believed that she was lying. *Id.* This "threw [him] for a loop." *Id.* at 45. With this new information,

the defense attempted to issue a subpoena, and a defense investigator looked for Bergmann for three or four days during the trial but she "was nowhere to be found." *Id.* at 46, 56.

Ellis frames this issue as a failure to investigate claim, but his argument frequently veers into Attorney Forr's failure to ensure that Bergmann was present to testify. A claim that a lawyer failed to interview or investigate a witness is distinct from a claim that a lawyer failed to call a witness to testify. *Commonwealth v. Dennis*, 950 A.2d 945, 960 (Pa. 2008). These types of claims differ "in a subtle but important way." *Commonwealth v. Stewart*, 84 A.3d 701, 712 (Pa. Super. 2013).

In some circumstances, it is per se unreasonable for counsel not to attempt to investigate or interview a known witness. *Commonwealth v. Pander*, 100 A.3d 626, 638-39 (Pa. Super. 2014). However, even if counsel's failure to investigate or interview a witness is per se unreasonable, the burden remains for the petitioner to plead and prove that the failure to investigate or interview a witness resulted in prejudice at trial. *Dennis*, 950 A.2d at 960-61.

The failure to call a witness, on the other hand, cannot be per se unreasonable because the decision involves matters of trial strategy. *Pander*, 100 A.3d at 638-39. Accordingly, to establish a claim that counsel was ineffective for failing to present a witness, a petitioner must satisfy the performance and prejudice prongs. *Id.* A petitioner may do so

by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1109 (Pa. 2012). To demonstrate prejudice, the petitioner must show "how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case" and "helpful to the defense." *Id.*

Under either framework, Ellis must plead and prove sufficient prejudice, which, in the PCRA context, is a reasonable probability that the outcome of trial would have been different had counsel interviewed and/or subpoenaed Bergmann earlier. *See Dennis*, 950 A.2d at 961. This Ellis did not do. Bergmann's statement, if believed, would not negate Griffith's testimony that she saw Ellis shoot Hackney three times in his bedroom. Further, Ellis failed to establish that Bergmann would have testified on his behalf (then or now) and that her testimony would have been consistent with her interview statement to police in 2016. *See id.* at 965. Accordingly, Ellis' first issue warrants no relief.

**Failure to Preserve a *Carpenter* Suppression Challenge**

Ellis argues that Attorney Forr rendered ineffective assistance by failing to preserve a challenge to the Commonwealth's warrantless acquisition of CSLI data pursuant to *Carpenter v. United States*, 585 U.S. 296, 310

- 11 -

(2018).[8] Ellis' Brief at 20. Ellis contends that the Commonwealth obtained the CSLI from his Sprint cell phone without a warrant in violation of the Fourth Amendment,[9] and by not amending the omnibus pretrial motion or otherwise timely challenging the introduction of the CSLI, Attorney Forr deprived him of a meritorious claim without a reasonable basis. Ellis' Brief at 25-26. Without the CSLI placing him around Hackney's residence at the time of the murder to bolster Griffith's eyewitness testimony, Ellis insists, the outcome of the trial would have been different. *Id.* at 27-29.

The PCRA court provided two reasons for denying Ellis' claim, neither of which is supported by the record. First, the PCRA court decided that this claim lacked merit because Attorney Forr testified that he did raise a *Carpenter* challenge in a motion in limine filed two or three weeks prior to trial. PCRA Court Opinion, 11/16/2023, at 9; *see also* N.T., 6/16/2023, at 29-31. The record reflects, however, that Ellis' failure to adequately raise a *Carpenter*

---

[8] The *Carpenter* Court held that individuals have a legitimate expectation of privacy in the record of physical movements captured through CSLI, and as such, the Fourth Amendment requires law enforcement officials to obtain a warrant supported by probable cause prior to obtaining historical CSLI from a third-party carrier. *Carpenter*, 585 U.S. at 316.

[9] In his argument pertaining to his third point of error, Ellis explains that instead of obtaining a warrant, in 2014, the Commonwealth obtained the CSLI data by applying for a court order pursuant to section 5743 of the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa.C.S. §§ 5701-5782. *See* Ellis' Brief at 39-42. Despite not being entitled a search warrant, it is possible for the substance of an application for historical CSLI pursuant to the Wiretap Act to fulfill the requisites for a valid warrant. *Commonwealth v. Rivera*, 316 A.3d 1026, 1037 (Pa. Super. 2024).

challenge has already been judicially determined. The trial court ruled that neither the omnibus pretrial motion nor the motion in limine specifically preserved a claim that the CSLI should have been suppressed prior to *Carpenter*. *Ellis*, 240 A.3d 153, at \*10. This Court agreed with the trial court that Ellis "waived this issue" for direct appeal "because he failed to timely raise a claim implicating *Carpenter* prior to his post-sentence motion." *Id.*; *see* Pa.R.Crim.P. 581(b) (providing that, generally, a suppression of evidence issue is waived if not raised in an omnibus pretrial motion).

The PCRA court's second explanation for denying the claim is that Attorney Forr had a reasonable basis for failing to present a *Carpenter* challenge, as he planned to present an expert to challenge the accuracy of the location of the CSLI. PCRA Court Opinion, 11/16/23, at 9 (citing N.T., 6/16/2023, at 63). Ellis contends that this mischaracterizes Attorney Forr's testimony. Ellis' Brief at 26. We agree. The reason cited by the PCRA court was provided by Attorney Forr to explain why he did not challenge the authenticity of the Sprint cell phone records, including the CSLI data, not why he failed to present a *Carpenter* challenge to suppress the introduction of the information in the first place. *See* N.T., 6/16/2023, at 52-53, 62-63 (explaining that he did not challenge the authenticity of the CSLI or other cell phone data because he thought he would have better success challenging the accuracy of the data through an expert). Indeed, as we just noted, Attorney

Forr claimed that he did try to present a *Carpenter* challenge. *See* N.T., 6/16/2023, at 29-31.

Nonetheless, our disagreement with the PCRA court's rationale does not mean that Ellis is entitled to relief. The law is clear that we are not bound by that rationale and may affirm on any basis supported by the record. *See Commonwealth v. Doty*, 48 A.3d 451, 456 (Pa. Super. 2012).

In addition to finding that Ellis failed to present and preserve a *Carpenter* challenge with specificity on direct appeal, this Court agreed with the trial court's alternative analysis, which was that even if Ellis had preserved a suppression claim based upon *Carpenter*, it would lack merit "because any error in admitting the CSLI evidence was harmless given the totality of the other overwhelming evidence" against Ellis. *Ellis*, 240 A.3d 153, at * 10. The other uncontradicted and untainted evidence against him included Griffith's eyewitness testimony identifying Ellis as the mastermind of the conspiracy and the person who shot Hackney three times, CSLI information from Griffith's phone placing her at Hackney's house, and post-arrest statements made by Ellis. *See id.* (citing Trial Court Opinion and Order, 9/20/2019, at 32-33).[10]

_____

[10] The post-arrest statements included a confession to his cellmate Travis Denny ("Denny") and a statement made during a phone call Ellis made from prison to someone named Jarell Smith ("Smith"). Trial Court Opinion and Order, 9/20/2019, at 32-33. Denny testified that Ellis told him that he had shot a person named Steve three times who he had met through his girlfriend Taylor. *Id.* According to Denny, Ellis told him that he had shot Steve for money, but that he dropped the money as he ran out of the back door of the
*(Footnote Continued Next Page)*

Thus, this Court has already determined that even if Ellis had preserved a *Carpenter* challenge prior to trial, and even if Ellis then established that the Commonwealth violated the Fourth Amendment by obtaining the CSLI without a warrant, admission of the tainted CSLI evidence at trial did not affect the outcome.

Given this alternative holding, we are constrained to conclude that Ellis failed to establish prejudice for PCRA purposes. Because the Commonwealth already satisfied the "lesser standard" of prejudice for purposes of harmless error, Ellis cannot use the same error to demonstrate the "more exacting 'actual prejudice' test" for purposes of the PCRA. *See Commonwealth v. Spotz*, 84 A.3d 294, 315 (Pa. 2014). Put another way, Ellis cannot use the erroneous admission of evidence that this Court has already deemed to be harmless on direct appeal to demonstrate that there is a reasonable probability that, but for Attorney Forr's failure to preserve a *Carpenter* challenge, the result of the trial would have been different. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (holding that to establish prejudice relative to a suppression motion, the litigant must establish that the "Fourth Amendment claim is meritorious and that there is a reasonable probability

---

house. *Id.* The jury also heard a recorded phone call between Ellis and Smith. *Id.* Upon hearing that police recovered a cell phone dropped by Green near the scene, Ellis stated that it was over for him because he knew that Green was going to testify against him. *Id.*

that the verdict would have been different absent the excludable evidence").

Accordingly, Ellis' second claim of error garners him no relief.

**Failure to Adequately Request a *Franks* Hearing**

In his third issue, Ellis contends that Attorney Forr rendered ineffective assistance by failing to request, with the requisite specificity, a hearing to challenge the veracity of statements made by former Detective Matthew S. Starr in an application to obtain disclosure of records concerning Ellis' Sprint cell phone pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Ellis' Brief at 44.

Our Supreme Court has summarized *Franks* as follows:

The United States Supreme Court recognized the right to challenge an affidavit's veracity in *Franks v. Delaware*, 438 U.S. 154 (1978), which addressed whether a defendant has the right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of factual averments in an affidavit of probable cause. *Id.* at 155. The Court held where the defendant makes a substantial preliminary showing the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit, the Fourth Amendment requires a hearing be held at the defendant's request. *Id.* at 155–56. The Court emphasized the defendant's attack on the affidavit must be "more than conclusory and must be supported by more than a mere desire to cross-examine"; the defendant must allege deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof. *Id.* at 171. If the defendant meets these requirements, but the remainder of the affidavit's content is still sufficient to establish probable cause, no hearing is required. *Id.* at 171–72. If the affidavit's remaining content is insufficient, a hearing is held, at which the defendant must establish, by a preponderance of the evidence, the allegation of perjury or reckless disregard. *Id.* at 156, 172. If he meets this burden, the affidavit's false material is disregarded; if its remaining content is insufficient to establish probable cause, the

- 16 -

search warrant is voided, and the fruits thereof are excluded. *Id.* at 156.

***Commonwealth v. James***, 69 A.3d 180, 188 (Pa. 2013) (parallel citations omitted).

In a rather convoluted argument, Ellis contends that because the Commonwealth's application for a court order under the Wiretap Act was akin to a search warrant, he should have been able to test the veracity of the statements in the application through a *Franks* challenge. Ellis' Brief at 43. In the application, Ellis explains, Detective Starr relied upon a tip received by an anonymous person who approached Detective DePaolis at the crime scene to disclose that she heard that Hackney was set up by Griffith and her boyfriend, Ellis. *Id.* at 41. Ellis maintains that there is "clearly something bizarre" about this anonymous tip considering that other police records do not mention it and the only reference to it is in this application filed by Detective Starr, who later was discharged for fraud in an unrelated matter. *Id.* at 48. According to Ellis, Attorney Forr should have amended the omnibus pretrial motion or briefed the issue after oral argument to augment the general allegations about Detective Starr's propensity for fraudulent behavior with a mention of the "bizarre" reference to an anonymous tipster. *Id.* at 46-48.

Ellis presents this argument concerning the anonymous tipster for the first time on appeal. Before the PCRA court, Ellis averred merely that "information existed and was known to counsel other tha[n] Detective Starr's past indiscretions to warrant a hearing pursuant to *Franks*." Amended PCRA

Petition, 9/30/2022, ¶ 36. At the hearing, the only information that Ellis introduced regarding the *Franks* issue was Attorney Forr's testimony that he believed that Ellis had a viable challenge to the veracity of the application because Detective Starr's statements in the affidavit conflicted with the statements of another officer. N.T., 6/16/2013, at 41-43. Ellis has therefore waived this argument by failing to present it to the PCRA court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Even if we did not find waiver, Ellis' claim would fail as he did not prove the merit of the underlying *Franks* claim. Innuendo regarding the falsity of a statement by an untrustworthy police officer does not constitute a substantial preliminary showing of perjury or a reckless disregard for the truth under *Franks*. *See James*, 69 A.3d at 188. Furthermore, Ellis failed to establish prejudice for PCRA purposes. At best, a successful *Franks* challenge would have prevented the Commonwealth from introducing the CSLI; it would not negated Griffith's eyewitness testimony. Accordingly, Ellis' third claim fails.

**Stipulating to Authenticity of Cell Phone Evidence**

In Ellis' fourth point of error, he argues that Attorney Forr should not have stipulated to the authenticity of the records from his Sprint phone, including the CSLI data, and instead should have forced the Commonwealth to authenticate the records with a witness from Sprint. Ellis' Brief at 51-54. We need not dwell upon this claim, as Ellis has not established arguable merit, no reasonable basis, or prejudice. Ellis simply questions Attorney Forr's

strategy and suggests that by failing to force the Commonwealth to prove the authenticity of the records, Attorney Forr forwent a chance to exclude the records. *See* Ellis' Brief at 53. Ellis does not establish that the records lacked authenticity or otherwise show that forcing the Commonwealth to prove the authenticity of the records would have prevented their introduction at trial or changed the outcome of the proceedings. As already discussed above, Attorney Forr thought his best chance to undermine the Sprint cell phone records was by challenging their accuracy, not their authenticity. Accordingly, Ellis' fourth claim fails.

**Failing to File a Motion to Strike the Jointly Selected Jury**

Ellis' final point of error is that Attorney Forr failed to file a motion to strike the jury panel jointly selected with his codefendant Green when Green changed his plea after jury selection but prior to the start of trial. Ellis' Brief at 35. Ellis contends that Green's active participation in voir dire and subsequent absence at trial improperly allowed the jury to draw its own conclusions regarding Green's absence at trial. *Id.* at 35-36. Further, Ellis argues that he was deprived of Green's preemptory strikes because he had to share the seven preemptory strikes with Green during voir dire. *Id.* at 36. He highlights Attorney Forr's testimony that he "probably should have done something" about the jury, had he been less focused upon trial preparation. *Id.* at 33 (citing N.T., 6/13/2023, at 38). Ellis points out that Attorney Forr's reason for not pursuing a motion to strike the jury panel—time constraints and focus on trial preparation—is incongruous, as a challenge to the jury would

- 19 -

have afforded Attorney Forr more time to prepare for trial. *Id.* at 36. He also argues that despite Attorney Forr's assertion that Green's absence gave them an opportunity to point the finger at Green, Attorney Forr did little to pursue this particular strategy. *Id.* at 37. As for prejudice, Ellis asserts the importance of an impartial jury and repeats the same arguments he set forth regarding the arguable merit of the claim. *Id.* at 38.

Crucially, Ellis cites no case law to support the merit of his claim that he would have been entitled to a new jury panel simply because he had to share his preemptory strikes with Green or because Green was absent at trial. Had Attorney Forr objected to proceeding after Green's absence, rather than empaneling a new jury, the law provides that trial court could have provided a cautionary instruction. *See Commonwealth v. Boyer*, 856 A.2d 149, 155 (Pa. Super. 2004) (noting that "where some of defendants charged jointly plead guilty, it is incumbent upon trial judge to give adequate and clear cautionary instructions to jury to avoid 'guilt by association' as to the remaining defendant being tried") (citation omitted). Ellis does not establish whether such an instruction was requested or provided here.

Furthermore, Ellis does not articulate how he would have exercised preemptory challenges differently had he been entitled to all seven challenges or how he was prejudiced by sharing preemptory challenges with Green. *See Commonwealth v. Morales*, 494 A.2d 367, 373 (Pa. 1985) (holding that trial court did not abuse its discretion in declining to provide codefendants with the number of preemptory challenges to which they each would have

been entitled if tried alone "especially where appellant failed to allege, much less demonstrate, how he would be prejudiced by the limitation of peremptory challenges"). Pointedly, Attorney Forr testified that he thought Ellis could receive a fair and impartial trial with the jury he selected. *See* N.T., 6/16/2023, at 36. Accordingly, Ellis failed to establish the merit and prejudice prongs regarding this claim.

## Conclusion

Because Ellis did not plead and prove Attorney Forr's ineffectiveness as to any of his five claims assailing his stewardship, the PCRA court did not abuse its discretion in denying his PCRA petition in its entirety.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/9/2025